LAWRENCE ALIOTO
California State Bar No. 38931
582 Market St., Ste. 607
San Francisco, CA  94104
Telephone: (415) 399-0533
Fax:       (415) 399-9868
Email:  larralioto@yahoo.com

Attorney for Plaintiff
Maureen Dwyer Swinden,
Trustee

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| MAUREEN DWYER SWINDEN, TRUSTEE AND BENEFICIARY OF THE THOMAS R. DWYER TRUST,<br><br>Plaintiff,<br><br>vs.<br><br>THE VANGUARD GROUP, INC.; VANGUARD MARKEITNG CORPORATION; VANGUARD BROKREAGE SERVICES; and SALLY D. SLICHTER,<br><br>Defendants. | Case No. C 09-03816 SI<br><br>**FIRST AMENDED COMPLAINT FOR REDRESS OF BREACH OF TRUST AND UNAUTHORIZED PAYMENT OF TRUST FUNDS (JURY TRIAL DEMANDED)** |

May it please the court,

Pursuant to leave granted in the court's order of October 21, 2009, plaintiff files this First Amended Complaint and alleges as follows:

A. <u>Parties</u>.

1. Plaintiff in this action is Maureen Dwyer Swinden (hereinafter "Maureen" or "plaintiff").  Plaintiff resides in

Walnut Creek, California. Plaintiff brings this action in her capacity as trustee of the Thomas R. Dwyer Trust and also in her capacity as beneficiary of that trust. By this action plaintiff seeks a judgment directing defendants to pay to the Thomas R. Dwyer Trust $190,655 plus statutory interest from July 6, 2006. On July 5 and 6, 2006 defendant Sally D. Slichter made unauthorized withdrawals and the Vanguard defendants made unauthorized payments in that amount from funds of the Thomas R. Dwyer Trust on deposit with the Vanguard defendants.

2. Defendant The Vanguard Group, Inc., is a Pennsylvania corporation. It is one of the world's largest investment management companies. Vanguard Marketing Corporation and Vanguard Brokerage Services are subsidiaries, affiliates, or divisions of The Vanguard Group, Inc. These defendants will be referred to hereinafter as "Vanguard."

3. Defendant Sally D. Slichter is the sister of plaintiff. Like plaintiff, Sally D. Slichter is a trustee and beneficiary of the Thomas R. Dwyer Trust. Sally D. Slichter resides in Moss Landing, California.

B. <u>Pertinent Facts.</u>

4. On November 1, 1974, Thomas R. Dwyer, a resident of San Francisco, California, made a will which included a testamentary trust. Shortly after his death, the will was admitted to probate on November 29, 1979 (San Francisco Superior Court, Probate No. 225426). A true copy of the said will and testamentary trust agreement is attached hereto as Exhibit A. The trust provided for payments to the trustor's former wife, to his second wife, and to his daughters Maureen and Sally (Ex. A, pp. 4-6). Maureen, Sally

**FIRST AMENDED COMPLAINT FOR REDRESS OF BREACH OF TRUST AND UNAUTHORIZED PAYMENT OF TRUST FUNDS (JURY TRIAL DEMANDED)**

and Thomas S. Herman were named trustees of the trust (Ex. A, pp. 22-23). Thomas S. Herman was a business associate of the trustor. He withdrew from service as trustee in the early 1980's. The trust agreement provides that after payments to trustor's spouse and former spouse, Maureen and Sally should share equally in the income of the trust ("After making the foregoing payments to Betty Hinsdale Dwyer and Susie, the Trustee shall pay the remaining net income to my daughters, in equal amounts, so long as they both shall live." Ex. A, p. 6.) The trust provides that on the death of trustor's second wife, the "trustee shall divide the trust estate into two equal shares...," one of which shall be Sally's trust, the other Maureen's trust. Trustor's second wife died on September 17, 2008. The two separate trusts have not yet been implemented. What is clear from the trust instrument is trustor's intent that Sally and Maureen should share equally in the income and principal of the trust.

5. Until October of 2000 the assets of the Thomas R. Dwyer Trust were being managed by a Palo Alto investment management firm known as Bailard, Biehl & Kaiser, Inc. Sally was dissatisfied with their services and persuaded Maureen to switch the trust's business to Vanguard. On October 20, 2000, the trustees - Sally and Maureen - signed a New Account Application for Nonretirement Accounts with Vanguard. The said document is five pages in length and is attached hereto as Exhibit B. That document indicates that the account with Vanguard was a trust account, not an individual account, and that there were two trustees, Sally and Maureen. The document describes the trustees as homemakers, states that they are novices in the trading of securities, and designates their

3

**FIRST AMENDED COMPLAINT FOR REDRESS OF BREACH OF TRUST AND UNAUTHORIZED PAYMENT OF TRUST FUNDS (JURY TRIAL DEMANDED)**

wishes for the trust assets as income, growth and preservation of capital (Ex. B, p. 1, p. 4). The Application was approved by Vanguard on October 25, 2000 (Ex. B, p. 5).

6. Concurrently with the New Account Application for Nonretirement Accounts, the trustees and Vanguard entered into a writing entitled Securities Account Agreement. The Securities Account Agreement is affirmed by the parties on page 5 of the New Account Application for Nonretirement Accounts (Ex. B), at page 5 thereof. The Securities Account Agreement is attached hereto as Exhibit C. It provides in pertinent part, referring to the account holder:

> "Any reference to 'I/my/us' or gender shall include all signers of the New Account Application for Nonretirement Accounts."

Exhibit C, the Securities Account Agreement, further provides:

> "I hereby authorize and instruct you to accept from me any and all orders and instructions for and concerning the said account in regard to the following:
>
> "(a) The purchase and sale of securities and options contracts.
>
> "(b) The payment of money.
>
> "(c) The registration and delivery of securities.
>
> "(d) Any other action with respect to this account."

The wire transfer from Vanguard to Sally on July 5 and 6, 2006 in the amount of $190,655 were payments of money and are subject to the terms just quoted of the Securities Account Agreement. Exhibit C and all transactions, apparently securities

transactions, made in the trust's account are governed by the law of Pennsylvania.

7. On January 4, 2001, Jo Anne Barnes of Vanguard wrote to Sally and Maureen and advised them that the "trust portfolio should be invested with a long term asset allocation of 65% stocks and 35% bonds, with a current tactical allocation of 55% stocks and 45% bonds." Invariably the trustee parties to this case followed Vanguard's recommendations regarding placement of the trust assets. As a practical matter Vanguard controlled the placement of the trust's assets at all times pertinent hereto. The letter of Jo Anne Barnes is attached hereto as Exhibit D.

8. Shortly after signing on with Vanguard, the trustees of the Thomas R. Dwyer Trust – Maureen and Sally – agreed with Vanguard on automatic or scheduled monthly payments for the four beneficiaries of the trust. Trustor's second wife would receive $5,500 per month, his first wife $3,000, and Maureen and Sally would receive $3,000 each (Exhibit E hereto). Exhibit E is a summary of the trust's first full year of business with Vanguard. It shows "systematic withdrawals" of $3,000, $5,500, $3,000 and $3,000 every month around the 20th of the month. These systematic withdrawals were set up after the concurrent agreement of Sally and Maureen with Vanguard. It was not necessary to renew the authorization every month, and Vanguard made those payments to the trust's beneficiaries automatically. Exhibit E is 3 pages in length.

9. On or about January 15, 2001, the trustees – Maureen and Sally – submitted to Vanguard a document entitled Vanguard Wire Redemption Service. The same is attached hereto as Exhibit F.

5
**FIRST AMENDED COMPLAINT FOR REDRESS OF BREACH OF TRUST AND UNAUTHORIZED PAYMENT OF TRUST FUNDS (JURY TRIAL DEMANDED)**

The document is a form prepared by Vanguard, as are Exhibits B and C attached hereto. Exhibit F identifies the two trustees of the Thomas R. Dwyer Trust, and sets down the trust's employer identification number (94-650-9399) as the account owner. "You" and "your" in that document refer to the trust. The import of the document becomes clear if one substitutes "The Thomas R. Dwyer Trust" for "you" and "The Thomas R. Dwyer Trust's" for "your." The Vanguard Wire Redemption Service document authorizes wire transfers only from the Vanguard Prime Money Market Fund. Sally's unilateral withdrawal of funds on July 6, 2006 in the amount of $60,000 was from the Total Int'l Stock Index fund and her unilateral withdrawal of funds on that same day in the amount of $100,000 was from the Total Stock Mkt. Adm. fund of Vanguard (Ex. G attached hereto). Authorizations for these latter two payments cannot be based on Exhibit F, the Vanguard Wire Redemption Service document.

    10. In September of 2001 a dispute developed between the trustees – Sally and Maureen – and their stepmother. As a result, the trustees sent a letter to Vanguard asking Vanguard to discontinue the monthly payments of $5,500 to trustor's second wife. Gerald P. Kirkland, an investment advisor, had joined the trust as a trustee. He served as trustee from 1999 to 2003, receiving compensation of $1,000 per month. Thereafter only Maureen and Sally were trustees of the Thomas R. Dwyer Trust. The letter which trustees Maureen, Sally and Kirkland sent to Vanguard on September 5, 2001 is attached hereto as Exhibit H. Exhibit H is important for at least two reasons: 1) it reaffirms the monthly payments of $3,000 each to trustor's first wife, to Sally, and to

**FIRST AMENDED COMPLAINT FOR REDRESS OF BREACH OF TRUST AND UNAUTHORIZED PAYMENT OF TRUST FUNDS (JURY TRIAL DEMANDED)**

Maureen; and 2) it shows that withdrawals were approved on the consent of all trustees. Trustor's second wife was subsequently reinstated as a recipient of systematic withdrawals.

10. Four years passed. During this time the parties settled into a routine course of conduct. Every month the four automatic withdrawals of $5,500 (later $2,000), $3,000, $3,000 and $3,000 were made. All withdrawals were made on the authority and with the prior knowledge, approval and consent of both trustees. The withdrawals were about the size of the automatic withdrawals, that is, $5,500 or less.

11. In August of 2005, the trustees submitted a Vanguard Checkwriting Application to Vanguard (Exhibit I hereto). It specifically required on page 2 two signatures for all checks. This is consistent with the prior agreement of Vanguard and the trustees. Exhibit I required 2 signatures on all checks. Exhibit C, the Securities Account Agreement of 2000, required that the checks of Vanguard be made payable "in accordance with the registration of the account," that is, payable to the trust.

12. On July 5 and 6, 2006, without the prior knowledge, approval, or consent of Maureen, Vanguard made payments to Sally of $190,655 of trust funds of the Thomas R. Dwyer Trust (Ex. J, 3 pp.). The payments required the liquidation of securities (Ex. J, pp. 1-3), and were from three separate funds, only one of which is mentioned in the Vanguard Wire Redemption Service Document, being Exhibit F. The money was wired to Sally's personal account at USAA Bank (Ex. G). The July 5 and 6, 2006 wire transfers to Sally were a payment of money within the meaning of the Securities Account Agreement, fourth paragraph, item (b) (Ex. C hereto).

13. Shortly before or immediately after the $190,655 was in her account, Sally changed the computer code permitting access through the internet to information about the account. She did so for the purpose of preventing Maureen's access to the Vanguard account information and to keep Maureen from knowing and possibly preventing what was transpiring, or from somehow undoing what had just transpired.

14. Before making the July 5 and 6, 2006 payments to Sally, Vanguard made no effort to contact Maureen. Maureen's status as co-trustee and her telephone number appear throughout Vanguard's file. A telephone call by Vanguard to Maureen prior to Vanguard's payments to Sally would have prevented the July 5 and 6, 2006 payments and withdrawals.

15. After the July 5 and 6, 2006 payments to Sally, Maureen in writing on January 19, 2007 asked Vanguard to send to Maureen all of the forms bearing the trustees' signatures and all access and fund transferring information. Maureen received no response from Vanguard. On February 26, 2007, Maureen sent to Vanguard a follow-up reminder request for the same information. Again she received no response from Vanguard. To obtain the documentation she wanted from Vanguard, Maureen had to hire the services of a lawyer, who sent Vanguard a letter (Exhibit K hereto). Vanguard thereafter apparently responded. However, when this present litigation commenced, the copy of the New Account Application for Non-Retirement Accounts in Maureen's possession was completely illegible in parts and did not contain the square at the bottom of page 5 of that document, in which square Vanguard manifested its asset to the agreement. Compare the New Account Application for

Non-Retirement Accounts attached to plaintiff's original complaint in this case to the same document attached to Vanguard's September 28, 2009 brief in this case. Also, at the commencement of this case Maureen did not have a copy of the Securities Account Agreement (Exhibit C hereto), despite the request of Exhibit K.

C. <u>Claims for Relief</u>.

<u>Claim No. 1 – Breach of Trust – Sally D. Slichter</u>

16. All previous allegations of this First Amended Complaint are incorporated herein by reference.

17. Co-trustee Sally D. Slichter is guilty of breach of trust of the Thomas R. Dwyer Trust in the matter of the July 5 and 6, 2006 withdrawal of funds from the trust and placement of the same in her personal bank account. The trust requires that distributions to the beneficiaries thereof be equal. At present, Sally and Maureen are the only beneficiaries of the trust. Sally's withdrawal of the funds created a substantial inequality between Sally and Maureen in the benefits obtained from the trust. The trust requires that the trustees concur in decisions regarding the payment of funds out of the trust. Maureen had no prior knowledge of the July 5 and 6, 2006 withdrawals of trust funds by Sally. The law requires a trustee to obtain no benefit from the trust except as provided therein or agreed among interested parties; the law requires the trustee scrupulously to observe the terms of the trust and to act selflessly and in good faith toward the execution of the trustor's intent and for the benefit of the beneficiaries. Sally breached all of these requirements when she secretly on July 5 and 6, 2007 took from the trust assets the $190,655 and deposited the same in her personal account.

Claim No. 2 - Participation of Third Party in Trustee's Breach of Trust - Vanguard

18. All previous allegations of this First Amended Complaint are incorporated herein by reference.

19. Vanguard had knowledge at all pertinent times of Sally's breach of trust alleged above. Vanguard knowingly or negligently participated in Sally's breach of trust above alleged by making to Sally on July 5 and 6, 2006 unauthorized payments of $190,655. The following facts support this conclusion.

   a. Vanguard had knowledge that the account holder in this case was a trust with two trustees. Vanguard made the payment to Sally without contacting Maureen, when it would have been extremely easy to contact her.

   b. There is no writing authorizing Vanguard to make the July 5 and 6, 2006 payments to Sally.

   c. The payments to Sally of July 5 and 6, 2006 were unlike the hundreds of payments Vanguard had made to the beneficiaries of the Thomas R. Dwyer Trust between January of 2001 and July of 2006, which hundreds of payments had the consent of all trustees of the trust. The payments of July 5 and 6, 2006 to Sally Vanguard were made at the sole request of Sally, without the consent of any other person associated with the trust.

   d. Vanguard wired the money to Sally's personal bank account.

   e. The payments of July 5 and 6, 2006 to Sally were many times larger than the payments Vanguard had been making to the Thomas R. Dwyer Trust beneficiaries for five and one-half years.

### Claim No. 3 – Breach of Fiduciary Duty – Sally D. Slichter

20. All previous allegations of this First Amended Complaint are incorporated herein by reference.

21. Sally D. Slichter as trustee of the Thomas R. Dwyer Trust owed at all times pertinent hereto a fiduciary duty to the said trust and to the beneficiaries thereof, including plaintiff Maureen Swinden. Sally breached those fiduciary duties in the matter of the July 5 and 6, 2006 withdrawals of funds of the trust.

### Claim No. 4 – Participation in Breach of Fiduciary Duty – Vanguard

22. All previous allegations of this First Amended Complaint are incorporated herein by reference.

23. Vanguard had knowledge at all pertinent times of Sally's breach of fiduciary duty above-alleged. Vanguard knowingly or negligently participated in Sally's breach of fiduciary duty above-alleged by making to Sally on July 5 and 6, 2006 unauthorized payments of $190,655 of the funds of the Thomas R. Dwyer Trust.

### Claim No. 5 – Breach of Contract – Vanguard

24. All previous allegations of this First Amended Complaint are incorporated herein by reference.

25. Under the agreements of the parties, true copies of which are attached hereto, and the parties' course of dealing with respect to those agreements over a period of five and one-half years, only payments from the Thomas R. Dwyer Trust made by Vanguard with the prior consent of both trustees of the Thomas R. Dwyer Trust or to both trustees of the Thomas R. Dwyer Trust were authorized payments. Vanguard's payments of July 5 and 6, 2006 to

defendant Sally D. Slichter were made at the sole request of Sally D. Slichter and were unauthorized payments made by Vanguard in breach of contract.

### Claim No. 6 – Negligent Breach of Fiduciary Duty – Vanguard

26. All previous allegations of this First Amended Complaint are incorporated herein by reference.

27. Vanguard at all times pertinent hereto owed a fiduciary duty to the Thomas R. Dwyer Trust, its trustees, and its beneficiaries. That fiduciary duty grows out of Vanguard's possession and control of the funds of the trust, and out of Vanguard's position as financial advisor and investment manager to the trust, its trustees, and its beneficiaries, and specifically included a duty to preserve the capital of the trust. Vanguard negligently breached its fiduciary duty to the Thomas R. Dwyer Trust and its trustees by making an unauthorized payment of $190,655 of trust funds to Sally D. Slichter on July 5 and 6, 2006. The unauthorized payments could have been avoided by a phone call to plaintiff Maureen D. Swinden.

### Claim No. 7 – Negligence – Vanguard

28. All previous allegations of this First Amended Complaint are incorporated herein by reference.

29. This court's order of October 21, 2009 provides at page 9 lines 3 and 4 that defendant's motion to dismiss plaintiff's claims of negligence is granted with leave to amend. However the following paragraph of the order states that the dismissal of plaintiff's claim for negligence is with prejudice. Interpreting insertion of the word "negligence" at line 9 of page 9 of the

**FIRST AMENDED COMPLAINT FOR REDRESS OF BREACH OF TRUST AND UNAUTHORIZED PAYMENT OF TRUST FUNDS (JURY TRIAL DEMANDED)**

order as a slip of the pen, plaintiff here amends her negligence allegations.

30. The court's said order of October 21, 2009 states at page 9 line 2 that plaintiff's opposition to the motion to dismiss did not address the negligence claims or defendant's arguments in support of dismissing them. Plaintiff's opposition brief, filed on or shortly after September 18, 2009, begins with the statement that plaintiff will address the arguments of defendant in the same order in which they are presented by defendant. This was done to facilitate the court's review of the motion. Paragraph numbered Roman two in plaintiff's brief was left "reserved" for the sole purpose of correspondence of plaintiff's numbering with defendant's motion. In paragraph IV.B of defendant's motion, defendant treated breach of fiduciary duty and negligence under the same heading. Plaintiff therefore did the same in her opposition brief. But that opposition brief very definitely addresses negligence as well as breach of fiduciary duty in paragraph IV.B of plaintiff's argument. The quote from the Aas case addresses more the negligence cause of action than the breach of fiduciary duty cause of action. Plaintiff's paragraph IV.B concludes with the statement: "The gist of this case is the negligent payments to Sally, when a phone call to Maureen could have prevented the harm to the trust." Plaintiff did address defendant's argument on negligence in plaintiff's opposition to defendant's motion to dismiss. Plaintiff's points on negligence were separately presented in her surreply brief of October 16, 2009, at page 7.

**FIRST AMENDED COMPLAINT FOR REDRESS OF BREACH OF TRUST AND UNAUTHORIZED PAYMENT OF TRUST FUNDS (JURY TRIAL DEMANDED)**

31. Having possession, custody and control of the funds of the Thomas R. Dwyer Trust, Vanguard was under a duty of care to protect those funds from unauthorized payment or withdrawal, under the cases of <u>Bullis v. Security Pacific National Bank</u> (1978) 21 C.3rd 801, 807 and <u>Danning v. Bank of America</u> (1984) 151 Cal.App.3rd 961, 979-980. Vanguard breached that duty of care by paying $190,655 to Sally D. Slichter on July 5 and 6, 2006. Defendant well knew that its account holder was a trust having two trustees; the documentation in the file amply suggests that payments of the trust funds were to be made only with prior consent of both trustees. A phone call to Maureen before payment of the $190,655 would have avoided the unauthorized payment.

Wherefore, plaintiff prays that the court enter judgment against defendants, jointly and severally, and in favor of the Thomas R. Dwyer Trust, in the amount of $190,655 plus interest at 10% from July 6, 2006 to the date of judgment, and award plaintiff her costs of suit.

November 5, 2009

/s/
_____
Lawrence Alioto
Attorney for Plaintiff, Maureen Dwyer Swinden

<u>July Demand</u>

Plaintiff hereby demands trial by jury of all issues so triable in this case.

November 5, 2009

/s/
_____
Lawrence Alioto
Attorney for Plaintiff

---
14
**FIRST AMENDED COMPLAINT FOR REDRESS OF BREACH OF TRUST AND UNAUTHORIZED PAYMENT OF TRUST FUNDS (JURY TRIAL DEMANDED)**