LAWRENCE ALIOTO
California State Bar No. 38931
582 Market St., Ste. 607
San Francisco, CA 94104
Telephone: (415) 399-0533
Fax: (415) 399-9868
Email: larralioto@yahoo.com

Attorney for Plaintiff
Maureen Dwyer Swinden,
Trustee

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| MAUREEN DWYER SWINDEN, TRUSTEE AND BENEFICIARY OF THE THOMAS R. DWYER TRUST,<br><br>Plaintiff,<br><br>vs.<br><br>THE VANGUARD GROUP, INC.; VANGUARD MARKETING CORPORATION; VANGUARD BROKERAGE SERVICES; and SALLY D. SLICHTER,<br><br>Defendants. | Case No. C 09-03816 SI<br><br>**OPPOSITION TO MOTION TO DISMISS AMENDED COMPLAINT**<br><br>Date: Friday February 12, 2010<br>Time: 9:00 a.m.<br>Courtroom: 10, 19th Fl.<br>Judge: Hon. Susan Illston |

May it please the court,

I. <u>Vanguard's Liability in Negligence in this Case Arises from Vanguard's Status as a Depositary of the Thomas R. Dwyer Trust's Funds.</u>

This is the crucial factor upon which negligence liability for unauthorized withdrawals was found in <u>Bullis v. Security</u>

1  Pacific National Bank (1978) 21 C.3rd 801 and Danning v. Bank of
2  America (1984) 151 Cal.App.3rd 961.  Vanguard's status as
3  depository of the funds of the Thomas R. Dwyer Trust distinguishes
4  Vanguard from the defendants in the cases cited at page 10 of
5  Vanguard's motion papers (Stop Loss Insurance Brokers, Erlich,
6  Sonoma Foods, Inc., and Rejects Skate Magazine, Inc.) and for this
7  reason those cases are not pertinent.  If there were no
8  contractual writings at all between Vanguard and the trust, still
9  Vanguard would have a duty of care not to permit unauthorized
10 withdrawals of trust funds on deposit with Vanguard and in
11 Vanguard's sole possession, custody and control.  Please see cases
12 on negligence collected at Bank's Liability for Payment or
13 Withdrawal on Less than Required Number of Signatures, 7 ALR4th
14 655.
15 II.  Vanguard's Liability in Breach of Fiduciary Duty in this Case
16      Arises from Vanguard's Status as a Depositary of the Thomas
17      R. Dwyer Trust's Funds and from Vanguard's Status as
18      Investment Management Advisor to the Thomas R. Dwyer Trust.
19      Vanguard argues that it is not a bank.  This is true. Banks'
20 liability for unauthorized withdrawals is limited to negligence
21 and breach of contract, Bullis and Danning, *supra*, while
22 investment managers' liability to their clients is based on
23 negligence, breach of contract, and breach of fiduciary duty.
24 Twomey v. Mitchum Jones & Templeton (1968) 262 Cal.App.2d 690.
25 There is a second important difference between Vanguard and a
26 bank.  In the case of a bank, the depositors' money remains as
27 money.  In the case of Vanguard, the clients' money is converted
28 into securities (Amended Complaint, Exhibits D, E ("Trade Date"),

F, G ("Prime Money market," "Total Int'l Stock Index"), J). All of it is converted into securities (Amended Complaint, Ex. D). Who picks these securities, Vanguard or Maureen and Sally? The securities have unfamiliar names. This is not Microsoft or Apple, but Vanguard Admiral Funds, Vanguard Bond Index Fund, Vanguard Fixed Income (Amended Complaint, Ex. F), Total International Stock Index, Total Stock Market Adm.

Whether there exists a fiduciary duty owned by a defendant to a plaintiff is an issue of facts, depending on the particular facts and circumstances of each case. Apollo Cap. Fund. v. Roth Cap. Partners (2007) 70 Cal.Rptr.3rd 199, 216. But a district court ruling on a motion to dismiss is not sitting as a trier of fact. In re Gilead Sciences Securities Litigation (9th Cir. 2008) 536 F.3rd 1049, 1057.

Here we have two ends of the spectrum. At one end favoring the existence of fiduciary duty is the above cited Twomey case. At the other end is Vanguard's case of Leboce v. Merrill, Lynch (1983) 709 F.2d 605, where the court emphasized the investors' sophistication. The trier of fact will find our case much closer to Twomey than to Leboce. Defendant aptly points out that Gerald P. Kirkland, a former trustee of the Thomas R. Dwyer Trust, was an investment advisor. But Kirkland departed in 2003 (Amended Complaint, ¶10), leaving Sally and Maureen as the only trustees (*Ibid*). Sally and Maureen describe themselves as novices in the matter of trading experience and list their occupations as homemakers (Amended Complaint, Ex. B). If proved, this is ample evidence that Sally and Maureen relied upon Vanguard for financial advice, and that Vanguard owed a fiduciary duty to them and to the

**OPPOSITION TO MOTION TO DISMISS AMENDED COMPLAINT**

trust. Part of this fiduciary duty must be to prevent unauthorized withdrawals of the client's funds. The contract lists preservation of capital as one of the trust investment objectives (Amended Complaint, Ex. B, p. 4). One does not preserve capital by letting it go out the front door in unauthorized withdrawals. The issue of fiduciary duty is for the trier of fact.

III. <u>Vanguard's Liability for Breach of Contract Arises from the Plain Language of the Parties' Written Agreement and from the Parties' Course of Conduct With Respect to that Written Agreement Over the Course of Six and One-Half Years</u>.

The Amended Complaint alleges that Vanguard paid $190,655 of the trust's principal to Sally without Maureen's knowledge, approval or consent. Given this fact, Vanguard's contractual liability turns on the meaning of the word "me" in the sixth line of the Securities Account Agreement, which is attached to the Amended Complaint as Exhibit C.

"Me" is the objective case of "I." With respect to "I," the agreement states that "I" shall include all signers of the New Account Application. "I" does not refer to the account holder, which is the Thomas R. Dwyer Trust, but refers to the signers of the New Account Application. The signers of the New Account Application are Sally and Maureen (Amended Complaint, Ex. B, p. 5).

The other parties to the Securities Account Agreement are The Vanguard Group, whose logo appears in the upper right, and Vanguard Marketing Corporation, whose name appears at the upper left of Exhibit C.

4
**OPPOSITION TO MOTION TO DISMISS AMENDED COMPLAINT**

We must substitute "Vanguard" for "you" and "Sally and Maureen" for "I" and "me" in the fourth paragraph of the Securities Account Agreement. Now that paragraph reads in pertinent part as follows:

"Maureen and Sally authorize and instruct Vanguard to accept from Maureen and Sally any and all instructions for and concerning the said account in regard to the payment of money."

Plaintiff considers that the payment of money includes payment by check, payment by wire transfer, or payment by electronic fund transfer, or payment of money by any other means.

The sixth paragraph is also important. It provides that "Confirmations, notices, statements of account, and communications of every kind with reference to said account may be sent or given by you to any one of us." Here are listed the things which Vanguard can send to only one trustee. Those things do not include money, but are limited to confirmations, notices, statements of account, and communications of every kind with reference to said account.

Paragraph 7 refers not to inconsistent instructions between Sally, on the one hand, and Maureen, on the other, but to inconsistent instructions between Sally and Maureen, on the one hand, and their agent, on the other; or between Sally and Maureen at one time and Sally and Maureen at another time; or between their agent at one time and their agent at another time. Sally and Maureen had no agent for their dealings with Vanguard.

With regard to course of dealing a quote from the Minnesota Supreme Court in Fidelity & Casualty Co. of New York v. Peoples National Bank (Feb. 16, 1940) 290 N.W. 305, 306 is appropriate:

"Whatever doubt there may be as to the agreement is resolved by the testimony of the administrator's attorney that it "was the understanding" that no checks for withdrawals by the general administrator were to be paid by defendant without the countersignature of plaintiff. This understanding was observed as to all other withdrawals, which were considerable in number."

The Amended Complaint alleges in paragraph 10 that during the six and one-half years preceding Sally's unilateral withdrawals "all withdrawals were made on the authority and with the prior knowledge, approval and consent of both trustees." Sally's July 5 and 6, 2006 withdrawals are conspicuous for two reasons. They stand alone as unilateral withdrawals. They are far greater than any prior withdrawals. Before those July 5 and 6, 2006 withdrawals, Sally, Maureen, and Vanguard by their conduct were observing their agreement that all withdrawals require the prior approval of both Sally and Maureen.

There is another important principle which applies here. That is, that a depositary cannot legally pay out funds except upon the approval and signature which it has been instructed is necessary. United Milk Prod. Co. v. Michigan Ave. Nat. Bank of Chicago (7th Cir. 1968) 401 F.2d 14, 16. In other words, every payment by Vanguard from the Thomas R. Dwyer Trust which is approved in advance by Sally and Maureen is an authorized payment. Any other payment not approved by Sally and Maureen in advance breaches the contract between Vanguard and the Thomas R. Dwyer Trust. The Securities Account Agreement (Ex. C to the Amended Complaint) provides in two places that it cannot be waived, altered or modified except by another writing, and there is none.

IV. <u>Sally Could Not Have Carried Out the July 5 and 6, 2006 Defalcations Without Vanguard's Participation</u>.

It is important to distinguish between a wire transfer and an electronic fund transfer. A wire transfer would require a phone call from Sally to someone at Vanguard (Amended Complaint, Ex. F). Wire transfers usually require an originator (here the Thomas R. Dwyer Trust), a sender bank (Vanguard) and a receiving bank (Sally's account at USAA Federal Savings Bank (Ex. G). Here Vanguard knew that Sally was merely a co-trustee; that all payments of money were, by agreement between the trust and Vanguard, to be made only on the prior approval of both co-trustees; that this had been the practice over six and one-half years; and that the payments of July 5 and 6, 2006 far exceeded the $3,000 per month payments Sally had been receiving for six and a half years. These facts would have put Vanguard on notice that Sally's redemption requests of July 5 and 6, 2006 were worthy of suspicion and would have caused Vanguard to call Maureen, who would have told Vanguard that Sally was committing a breach of the trust in seeking the July 5 and 6, 2006 redemptions. Hence if Sally's defalcations were by wire transfer, it is not difficult to charge Vanguard with constructive knowledge of Sally's breach of trust and breach of fiduciary duty. Constructive knowledge is sufficient in the trust context. IV Scott on Trusts ¶297.

But our participation case may not be as simple as that. What if it was the case that Sally went online, all by herself, without the present participation of anybody at Vanguard, inputted her log-in code and password, and, all by herself, effected a transfer of funds from the account at Vanguard to her own bank

account?  Here it becomes pertinent to ask why Vanguard would have in place a software program which would not require two log-in codes and two passwords for a two-person joint account, whether those two log-in codes and passwords were inputted from the same or different terminals.  In case a further amendment of this complaint is necessary, and in order to demonstrate that plaintiff would be able to do so effectively, plaintiff here adduces the declaration of Gordon Pelton, plaintiff's computer science expert, who can testify that it would have been possible, practical, and feasible for Vanguard to program its existing software system so that, for joint accounts such as the one in the case at bar, two log-in codes and two passwords would be required in order to effect an electronic fund transfer redemption.  No doubt the evidence in this case will show that after Sally's July 5 and 6, 2006 defalcations, Vanguard made such an adjustment.

Certainly a finder of fact may find that Vanguard was guilty of negligence in leaving in place a software system which permitted one of two trustees unilaterally to remove trust funds. Without this negligence, without a software system which permitted her unilaterally to withdraw to her own account substantial principal of the trust, Sally could not have done it.  Vanguard's negligence was a *sine qua non*.

V.   Sally is an Indispensable Party to this Case.

The participation causes of action require a finding of breach of trust and breach of fiduciary duty on the part of Sally before Vanguard can have any liability.  The trust agreement gives Sally only income, and here she has embezzled principal, a clear breach of the trust agreement.  As a fiduciary to the trust, she

must put the interest of the trust above her own interest, and that she did not do in the matter of the July 5 and 6, 2006 redemptions. Hence breach of trust and breach of fiduciary duty are easily proved against Sally, but she must be a party to the case before this can happen. Only after breach of trust and breach of fiduciary duty have been established against Sally, can plaintiff prove that Vanguard enabled Sally to commit those breaches in circumstances in which Vanguard is chargeable with knowledge that Sally was committing a breach of trust and a breach of fiduciary duty.

But without Sally in the case the amounts which Maureen might recover from Vanguard for the trust might be in doubt. Vanguard has hinted at the unjust enrichment of Sally should Vanguard be required to repay to the trust the money which Vanguard let Sally take on July 5 and 6, 2006. Please see also <u>First Nat'l Bank of Bellair Bluffs v. Maricopa Corporation</u> (Fla. 1970) 230 So.2d 191, 192. But whether there will be such unjust enrichment again depends on whether Sally has committed a breach of trust or breach of fiduciary duty, and this cannot be determined except by a judgment. Thus the issue of whether Sally is guilty of breach of trust or breach of fiduciary duty can affect the recovery available to Maureen and the trust in this action and for that reason also Sally is an indispensable party in this case.

January 22, 2010      Respectfully,

/x/

_____
Lawrence Alioto
Attorney for Plaintiff, Maureen Dwyer Swinden

9
**OPPOSITION TO MOTION TO DISMISS AMENDED COMPLAINT**